```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FREEDOM MORTGAGE CORPORATION,

                              Plaintiff,
                                                                    REPORT AND
              -against-                                             RECOMMENDATION
                                                                    19-CV-1410-RJD-SJB
SALVATORE MONTELEONE, and
GIOVANNA MONTELEONE,

                              Defendants.
----------------------------------------------------------------X
```
**BULSARA, United States Magistrate Judge:**

Freedom Mortgage Corporation ("Freedom Mortgage") initiated this foreclosure action against Salvatore Monteleone ("Salvatore") and Giovanna Monteleone ("Giovanna" and together, "Defendants") on March 12, 2019. (Compl. dated Mar. 4, 2019 ("Compl."), Dkt. No. 1). It now seeks entry of a default judgment against both Defendants. (Notice of Mot. dated Jan. 12, 2022, Dkt. No. 27). Having identified an address in Brooklyn as Defendants' "last known address," Freedom Mortgage was obligated to serve a number of documents on Defendants there, beginning with the Complaint, and ending with the present motion papers. It failed to do so, and as such, it is respectfully recommended that the motion be denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 31, 2014, Defendants executed a Note and Mortgage with Freedom Mortgage Corporation DBA CHL Mortgage encumbering 50 Barlow Avenue, Staten Island, New York 10308 (the "Subject Property") in the principal amount of $205,000. (Compl. ¶¶ 1, 8–9; Note dated Aug. 31 2015 ("Note"), attached to Certificate of Merit dated Mar. 11, 2019 ("Certificate of Merit"), Dkt. No. 1-3; Mortgage dated Aug. 31, 2015 ("Mortgage"), attached to Certificate of Merit). The Monteleones signed the Note and

1

Mortgage. (Note at 2; Mortgage at 11). According to the Mortgage, Giovanna and Salvatore resided at 1255 77th Street, Brooklyn, New York 11228 (the "Brooklyn Address"). (Mortgage at 1). On February 6, 2019, the Mortgage was assigned to Freedom Mortgage. (Corporate Assignment of Mortgage dated Feb. 6, 2019 ("Assignment"), attached to Certificate of Merit).

Beginning with payment due on June 1, 2018, Defendants failed to make payments due under the Note. (Compl. ¶ 10). Each failure to make a payment constituted an event of Default. (Note at 1). The Complaint seeking foreclosure of the Mortgage on the Subject Property was filed on March 12, 2019. It identified Salvatore and Giovanna as the individuals who owned the Subject Property. (Compl. ¶¶ 3–4).

Giovanna Monteleone was served personally with a summons and Complaint on April 2, 2019 at the Subject Property. (Summons Returned Executed dated April 4, 2019, Dkt. No. 7 at 1). On April 5, 2019, the summons and New York Real Property Actions and Proceeding Law ("RPAPL") section 1303 Notice ("1303 Notice") were mailed to Giovanna at the same address. (*Id*. at 2). Proof of service—that is, the executed summons—was filed on the docket on April 9, 2019. Giovanna did not appear in the case, failed to answer, and as a result, the Clerk of Court entered default against her. (Entry of Default dated May 9, 2019, Dkt. No. 11).

Salvatore Monteleone was served through Giovanna. Salvatore's summons and Complaint were left with her at the Subject Property, which was described in the executed summons as his "place of residence." (Summons Returned Executed dated April 4, 2019 ("Salvatore Monteleone Summons"), Dkt. No. 8 at 1). On April 4, 2019, a summons and Complaint were mailed to Salvatore at the same address. (*Id*.). On April 5, 2019, a summons and 1303 Notice were also mailed to Salvatore Monteleone at the

2

same address. (*Id.* at 3). Proof of this service was filed on the docket on April 9, 2019. Salvatore did not appear in the case, failed to answer, and the Clerk of Court entered default against him. (Entry of Default dated May 9, 2019, Dkt. No. 11).

Freedom Mortgage filed a motion for default judgment on July 29, 2019. (Notice of Mot. dated July 25, 2019, Dkt. No. 14). The motion was denied as moot on January 30, 2020. (Order dated Jan. 30, 2020). The Court subsequently entered an order staying the case pending the resolution of *CIT Bank N.A. v. Schiffman*, 948 F.3d 529 (2d Cir. 2020). (Order dated Jan. 31, 2020, Dkt. No. 20 at 6). After the stay was lifted, Freedom Mortgage filed a renewed motion for default judgment on January 18, 2022. (Notice of Mot. dated Jan. 12, 2022, Dkt. No. 27).

In support of its motion for default judgment, Freedom Mortgage filed an affidavit that repeatedly states that Defendants' last known address is the Brooklyn Address. (*See, e.g.*, Aff. of Charles Lemons dated Jan. 10, 2022 ("Lemons Aff."), attached as Ex. F to Pl.'s Decl. in Supp. of Mot. dated Jan. 12, 2022 ("Vargas Decl."), Dkt. No. 29 ¶¶ 6, 8). Paragraph 6 of the Lemons Affidavit states:

> In compliance with RPAPL § 1304, a 90 day pre-foreclosure notice ("90 Day Notice") was sent to Salvatore Monteleone via first class and certified mail to 50 Barlow Ave, Staten Island, NY 10308-1811 which is the Property Address and Giovanna Monteleone via first class and certified mail to *50 Barlow Ave, Staten Island NY 10308-1811 which is the Property Address and 1255 77th St, Brooklyn, NY 11228-2421 which is the Defendants' last known address.* The 90 Day Notice was mailed on November 27, 2018 and listed at least five (5) housing counseling agencies. A copy of the 90 Day Notice and the affiliated certified mailing receipt is attached.

(*Id.* (emphasis added)). And again in paragraph 8:

> A notice of default dated November 16, 2018, ("Notice of Default") was mailed to Salvatore Monteleone via first class *to 50 Barlow Ave, Staten Island, NY 10308-1811 which is the Property Address and Giovanna Monteleone via first class to 1255 77th St, Brooklyn NY 11228-2421 which*

3

*is the Defendants' last known address* and to 50 Barlow Ave, Staten Island NY 10308-1811 which is the Property Address. A copy of the Notice of Default is attached.

(*Id.* ¶ 8 (emphasis added)). On January 21, 2022, the Honorable Raymond J. Dearie referred the motion to the undersigned for a report and recommendation.[1]

## DISCUSSION

Freedom Mortgage has chosen to serve Defendants almost exclusively at the Subject Property in Staten Island. And at times it has identified the Subject Property as Defendants' last known address. However, it has simultaneously identified the Brooklyn Address as Defendants' last known address. It is not the Court's role to determine which address is the last known address of Defendants—indeed, the Court relies on Freedom Mortgage's own statements entirely. Having identified the Brooklyn Address as their last known address, Freedom Mortgage was obligated to serve pleadings and motion papers upon Defendants at this address. It chose not to, and this decision is fatal to the motion for default judgment for three independent reasons.

    1.    It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him. "A court may not properly enter a default judgment unless it has jurisdiction over the person . . . against whom the judgment is sought, which also means that he must have been effectively served with process." *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, No. 17-CV-1585, 2017 WL

---

[1] The Court issued an Order to Show Cause as to why Freedom Mortgage's motion should not be denied in light of deficiencies related to service and Freedom Mortgage's compliance with RPAPL Article 13. Order dated May 9, 2022, Dkt. No. 32. Freedom Mortgage responded on May 16, 2022. Pl.'s Mem. of Law in Resp. dated May 12, 2022 ("Resp."), Dkt. No. 33. Because the Court finds the response to the Order to Show Cause insufficient to resolve the issues raised therein, the Court is recommending denial of the motion for default judgment.

4

3242331, at *2 (S.D.N.Y. July 28, 2017) (quotations omitted) (collecting cases), *reconsideration denied*, 322 F.R.D. 442 (Aug. 23, 2017).  "A default judgment obtained by way of defective service is void *ab initio* and must be set aside as a matter of law." *Aspex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd.*, No. 00-CV-2389, 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) (quotations omitted); *see Augustin v. Apex Fin. Mgmt.*, No. 14-CV-182, 2015 WL 5657368, at *2 (E.D.N.Y. July 27, 2015) ("Establishing proper service is . . . integral to determining whether the Court has personal jurisdiction over the defaulting defendant.  A default judgment is void if it is rendered by a court that lacks jurisdiction over the parties.") (quotations and citations omitted), *report and recommendation adopted in relevant part*, 2015 WL 7430008, at *3 (Nov. 23, 2015). On a motion for default judgment, a plaintiff bears the burden of proving service was proper.  *RCC Ventures*, 2017 WL 3242331, at *2.

      Rule 4(e) provides two means of serving an individual in federal district court. "Paragraph (1) permits service pursuant to the law of the forum state or the law of the state where service is made."  4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1094 (4th ed.); Fed. R. Civ. P. 4(e)(1) ("[A]n individual . . . may be served . . . by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]").  As relevant here, New York's Civil Practice Law and Rules ("CPLR") section 308(2) provides that the summons may be delivered "within the state to a person of suitable age and discretion at the . . . dwelling place or usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at his or her last known residence[.]"  Rule 4(e)(2) operates in a similar fashion— it "authorizes the use of the familiar methods of personal service or service at the

5

defendant's [dwelling or] usual place of abode." 4A Wright & Miller § 1094; Fed. R. Civ. P. 4(e)(2)(B) ("[A]n individual . . . may be served in a judicial district of the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]").

Freedom Mortgage attempted to serve Salvatore at his dwelling place or usual place of abode when it left a summons and Complaint with Giovanna at the Subject Property. But it identified the Brooklyn Address as Salvatore's last known address. (Lemons Aff. ¶¶ 6, 8). Having done so, Salvatore should have been served there. But he was not. And without proper service of the Complaint, no default judgment can be entered against him.

The arguments Freedom Mortgage offers to justify its failure to serve Salvatore at the Brooklyn Address are unpersuasive. It first argues that the Subject Property is in fact Salvatore's last known address, pointing to public records documents and noting that Giovanna identified the Subject Property as his home. (Resp. at 3–4). In so doing, however, Freedom Mortgage does not disavow the statements of its affiant that the Brooklyn Address was Salvatore's last known address.[2] Had it done so, the failure to serve there could have been excused. But the affidavit remains in the record, and

---

[2] Moreover, Freedom Mortgage mischaracterizes the documents. It argues that the "process server averred" that Giovanna "confirmed" that the Subject Property was Salvatore's last known address. Resp. at 3. But the affidavit of service contains no such "confirmation." The affidavit says: "[s]aid premises is defendant's place of residence[.]" Salvatore Monteleone Summons at 1 (emphasis omitted). But that is not a statement that is attributed to Giovanna, but is instead the statement of the process server. And while other statements are attributed to Giovanna—including about whether Salvatore was in the military—the statements about Salvatore's residence are not.

6

indeed, Freedom Mortgage asks the Court to rely on the same affidavit to enter judgment in the case.  Freedom Mortgage then argues that the Court improperly considered the Mortgage to discern Salvatore's last known address.  (*Id.* at 3).  This is a straw man argument.  To be sure, the Court's Order to Show Cause did identify the Mortgage as *another* document listing the Brooklyn Address; however, it is the January 2022 affidavit—filed well after the Complaint was served—submitted by Freedom Mortgage that suggests that the Brooklyn Address is where service should have been accomplished.  The Mortgage is only further evidence that the service was potentially improper.  The Clerk's default against Salvatore must be vacated.  *Miss Jones, LLC v. Viera*, No. 18-CV-1398, 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019), *report and recommendation adopted*, 2019 WL 955279, at *2 (E.D.N.Y. Feb. 26, 2019).[3]

      2.     As noted, Freedom Mortgage's affidavit, submitted in connection with the motion, identifies the Brooklyn Address as the last known address for both Defendants.  By so doing, Freedom Mortgage was also obligated to serve the motion papers at the Brooklyn Address.  It failed to do so and that independently requires the motion be denied.

"[A] motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules." *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015).  Service of the motion on non-appearing defendants is of particular importance, because "mailing notice of such an application is conducive to both fairness and efficiency[.]"  Committee Note, Loc. Civ. R. 55.2; *see Transatlantic Auto Grp., Inc. v. Unitrans-PRA Co.*, No. 08-

---

[3] Because Giovanna was served personally, service of the Complaint was proper pursuant to Rule 4(e)(1) and CPLR § 308(2).

CV-5070, 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011) (noting the local rules relating to default provide more protection for non-appearing defendants than the Federal Rules of Civil Procedure to promote fairness and efficiency), *report and recommendation adopted*, 2011 WL 4543838, at *1 (Sept. 29, 2011).  The relevant rule in this case is Local Rule 55.2(c), which requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)[.]" Loc. Civ. R. 55.2(c).

Freedom Mortgage mailed the motion for default judgment and related papers to Salvatore and Giovanna at the Subject Property alone—not the Brooklyn Address. (*See* Aff. of Service dated Jan. 19, 2022, Dkt. No. 31 at 1).  This is a failure to comply with Local Rule 55.2, and requires that the motion be denied.  *See, e.g.*, *Viera*, 2019 WL 926670, at *4; *United States v. Hamilton*, No. 18-CV-2011, 2019 WL 6830318, at *2–*3 (E.D.N.Y. Nov. 26, 2019), *report and recommendation adopted*, 2019 WL 6828276, at *1 (Dec. 13, 2019); *Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13-CV-253, 2015 WL 13741871, at *7 (E.D.N.Y. Sept. 22, 2015).

3.   Quite independently from the failure to serve the Complaint or comply with Local Rule 55.2, the motion for default judgement should be denied for failure to comply with RPAPL section 1304.

RPAPL Article 13 requires a plaintiff to send notice to a borrower facing foreclosure ("1304 Notice").

> Section 1304 of the RPAPL requires that, at least 90 days before commencing a home foreclosure action, a notice of default on the mortgage loan be sent by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is subject to the mortgage.  Section 1304 also prescribes the contents of the notice.

8

*Windward Bora LLC v. Armstrong*, No. 18-cv-6355, 2021 WL 606713, at *5 (E.D.N.Y. Feb. 16, 2021) (internal quotations and citations omitted). "Proper service of [an] RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)).

To demonstrate its compliance with section 1304, Freedom Mortgage relies again on the affidavit of its foreclosure specialist, Charles Lemons. Lemons affirmed his familiarity with Freedom Mortgage's record-keeping systems and his personal knowledge of the mailings referred to in the affidavit based on his examination of the relevant business records. (Lemons Aff. ¶ 1). Lemons avers that a 90 Day Notice was mailed to Salvatore via first class and certified mail at the Subject Property, and to Giovanna via first class and certified mail at the Subject Property and to the Brooklyn Address. (*Id.* ¶ 6). The affidavit also states that a "copy of the 90 Day Notice and the affiliated certified mailing receipt is attached." (*Id.*). The affidavit and the attachments, therefore, reflect that the 90 Day Notice was not mailed to Salvatore at the Brooklyn Address, despite identifying the address as his last known address. (*See* 90 Day Notices ("90 Day Notices"), attached to Lemons Aff.).[4]

---

[4] Attached to the Lemons Affidavit are copies of the notice sent to Salvatore by certified mail at the Subject Property (90 Day Notices at 1); to Giovanna by certified mail at the Subject Property (90 Day Notices at 11); to Giovanna by first class mail at the Subject Property (90 Day Notices at 21), to Giovanna by first class mail at the Brooklyn Property (90 Day Notices at 31); to Giovanna by certified mail at the Subject Property (90 Day Notices at 41); and to Salvatore by first class mail at the Subject Property (90 Day Notices at 51).

If the Brooklyn Address was Salvatore's last known address, a 90 Day Notice should have been sent to him at that address. *E.g., Windward Bora, LLC v. Thompson*, No. 18-CV-1811, 2020 WL 1242828, at *3. The mailing to Giovanna alone is not enough; a notice must be sent to each borrower individually, even when borrowers share the same address. *E.g., Wells Fargo Bank, N.A. v. Yapkowitz*, 199 A.D.3d 126, 134 (2d Dep't 2021) (holding that a "plaintiff must separately mail a 90–day notice to each borrower as a condition precedent to commencing the foreclosure action"); *Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 105–07 (2d Dep't 2011) (finding that plaintiff failed to establish § 1304 compliance when it failed to provide a notice to a borrower, rejecting argument that she would have been put on notice by a mailing to her husband), *overruled in part by Conti-Scheurer*, 172 A.D.3d 17 (2d Dep't 2019); *see also Deutsche Bank Nat'l Tr. Co. v. Loayza*, 204 A.D.3d 753, 754–55 (2d Dep't 2022) (holding that mortgagee did not strictly comply with section 1304 where notice was mailed in a single envelope jointly to both defendants rather than individually addressed to each defendant).

Separately, although the affidavit states that certified mailing receipts were attached, no *receipts* were in fact attached—the copies of notices attached to the affidavit contain mail bar codes, which are not the same thing as certified mailing receipts. *E.g., U.S. Bank, Nat'l Ass'n v. Zientek*, 192 A.D.3d 1189, 1191 (2d Dep't 2021) ("[A]lthough the envelopes accompanying the 90–day notices state 'First–Class Mail' and contain a bar code above a 20–digit number, the plaintiff failed to submit any receipt or corresponding document proving that the notices were actually sent by first-class and certified mail[.]"). It is well-established that bar codes alone do not establish proof of mailing. *E.g., Deutsche Bank Nat'l Tr. Co. v. Feeney*, 188 A.D.3d 997, 998 (2d

10

Dep't 2020) ("A copy of a letter and envelope addressed to the defendant, each bearing a 20-digit number, was insufficient to eliminate all triable issues of fact as to whether the certified mailing actually occurred[.]"); *U.S. Bank Nat'l Ass'n v. Offley*, 170 A.D.3d 1240, 1242 (2d Dep't 2019) ("[T]he presence of numbered bar codes on the copies of the 90-day statutory notices submitted by the plaintiff did not suffice to establish, prima facie, proper mailing under RPAPL 1304[.]"); *CitiMortgage, Inc. v. Osorio*, 174 A.D.3d 496, 498 (2d Dep't 2019) ("The presence of 20-digit numbers on the copies of the 90-day notices submitted by the plaintiff, standing alone, did not suffice to establish, prima facie, proper mailing under RPAPL 1304[.]"); *Citibank, N.A. v. Wood*, 150 A.D.3d 813, 814 (2d Dep't 2017) (finding references to purported tracking numbers stamped on the notice insufficient to establish compliance where unaccompanied by proof of a standard office mailing procedure or "independent proof of the actual mailing").  And the copies attached to the affidavit contain no other marking evidencing an actual mailing by the United States Postal Service ("USPS").  *E.g.*, *Wells Fargo Bank, N.A. v. Trupia*, 150 A.D.3d 1049, 1050–51 (2d Dep't 2017) (evidence insufficient to establish compliance with section 1304 where affiant "did not aver that she was familiar with the plaintiff's mailing practices and procedures" and where certified mail receipt "contained no language indicating that it was issued by the United States Postal Service"); *see also Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-cv-02288, 2019 WL 4014842, at *5 (E.D.N.Y. May 28, 2019) ("Wilmington's submissions fail to adequately demonstrate compliance with RPAPL § 1304's mailing requirements.  Plaintiff has not furnished any uncontroverted USPS records, such as certified mailing receipts or certificates of first-class mailing.  Rather, Wilmington relies on copies of mailing labels that do not definitively establish that the 90-day notice was indeed mailed.") (internal citation and

quotations omitted), *report and recommendation adopted*, 2021 WL 2548971, at *5 (June 22, 2021).  This failure runs to both Salvatore and Giovanna—since of the six notices attached to the Lemons Affidavit, only three (mailings to Salvatore and Giovanna at the Subject Property) contain the basic USPS certified mail bar code, (90 Day Notices at 1, 11, 41); the others sent to Salvatore and Giovanna at the Subject Property and Giovanna at the Brooklyn Address contain no proof of certified mailing at all.

The Court identified these section 1304 deficiencies in its Order to Show Cause.  In response, Freedom Mortgage did not dispute the Court's observations, nor did it provide additional documentation to supplement its proof of compliance.  Rather, it contends the Court is wrong to *sua sponte* raise the issue of 1304 compliance because the 1304 compliance is an "affirmative defense." (Resp. at 4–11).  Freedom Mortgage misapprehends the law and the posture of this case.

As an initial matter, it is not at all clear that section 1304 compliance is an "affirmative defense," as opposed to an element of a foreclosure claim that must be pled.  Indeed, the Second Circuit stated that "[p]roper service of [an] RPAPL 1304 notice on the borrower or borrowers is a *condition precedent* to the commencement of a foreclosure action[.]"  *CIT Bank*, 999 F.3d at 116 (second alteration in original; emphasis added).  And as such, "the plaintiff has the burden of establishing satisfaction of this condition." *Id*.  If compliance were an affirmative defense, then it would not be a threshold prerequisite to be established by the plaintiff.  And that is why "federal courts sitting in New York regularly review compliance with RPAPL § 1304 in ruling on motions for default judgment in foreclosure cases." *See Thompson*, 2020 WL 1242828, at *4 n.6 (collecting cases); *see also Freedom Mortg. Corp. v. Powell*, No. 18-cv-4265,

12

2020 WL 4932145, at *3 (E.D.N.Y. Aug. 24, 2020) ("[C]ourts in this district routinely review § 1304 compliance on motions for default judgment.") (collecting cases); *Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919, 2020 WL 6370057, at *1 n.2 (E.D.N.Y. May 27, 2020) ("Plaintiff's argument that it need not prove the sufficiency of the 90-day notice on its motion for summary judgment because the challenge thereto is an affirmative defense, not an element of a *prima facie* case, is misplaced. Both state and federal courts in New York have found that '[p]roper service of a RPAPL § 1304 notice on the borrower is a condition precedent to the commencement of a foreclosure action' and '[p]laintiff has the affirmative obligation to establish strict compliance with RPAPL § 1304.'") (internal citation omitted), *report and recommendation adopted*, 2020 WL 5200903, at *3 (Sept. 1, 2020).

But even if were an "affirmative defense," the Court is not *sua sponte* considering Freedom Mortgage's section 1304 compliance. Freedom Mortgage raised the issue initially and then repeatedly throughout the litigation. It first alleged in the Complaint that it complied with section 1304. (Compl. ¶ 13). It then filed a motion for default judgment (which was initially denied) that asserted compliance with section 1304. (Pl.'s Decl. in Supp. of Mot. dated June 25, 2019, Dkt. No. 16 ¶ 4). Its present brief in support of default judgment argues that section 1304 was complied with. (Pl.'s Mem. of Law in Supp. of Mot. for Default J. dated Jan. 11, 2022, Dkt. No. 28 at 10–14). And the declaration submitted by its foreclosure specialist *and* its attorney affidavit in support both attempt to demonstrate section 1304 compliance. (Lemons Aff. ¶ 6; Vargas Decl. ¶ 4). It is Freedom Mortgage that has raised section 1304 compliance, not the Court. If it did not believe it was an affirmative pleading requirement, there was no reason to mention section 1304 compliance in the Complaint or in support of its motion. Yet,

13

now, when the Court has scrutinized the evidence put forward and found it to be lacking—failing to show proof of certified mailing or notice to both borrowers—Freedom Mortgage engages in a kind of gamesmanship, urging the Court to ignore what is in front of it.  No case or doctrine supports such a practice.  Plainly and simply, Freedom Mortgage asserts that it complied with section 1304, and a basic examination of the evidence it provided reveals that it has not.  Because compliance is a "prerequisite" to obtaining foreclosure against Defendants, and it has failed to demonstrate compliance, the motion for default judgment must be denied.  *E.g.*, *Miami Home LLC v. Viera*, No. 18-CV-1398, 2022 WL 1693822, at *1 (E.D.N.Y. May 26, 2022) (adopting report and recommendation).[5]

## CONCLUSION

The Court, therefore, respectfully recommends that the motion for default judgment be denied.

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report

---

[5] As such, the amalgam of cases that Freedom Mortgage has proffered—about waiver, *sua sponte* affirmative defenses and the like—are inapposite.  Had Freedom Mortgage not put forward any evidence regarding its section 1304 compliance, and just said in the Complaint it complied with the provision—full stop—the case would be in a different posture.  But having identified Defendants' last known addresses, and pleaded facts about its compliance, the Court cannot just ignore the evidence presented: that the facts demonstrate that section 1304 was not complied with.  None of the cases cited by Freedom Mortgage present a similar procedural situation.

operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.") (quotations omitted).

SO ORDERED.

/s/ Sanket J. Bulsara   June 27, 2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

15